JOHN A. BRADY V. EMMA J. BANTA *et al.*

1. HOMESTEAD — *Rights of Widow and Children* — *Partition.* Where real estate is occupied by a man and his family as a homestead at the time of his death, and afterward by his widow and children, and the widow marries again, the homestead may be partitioned between her and the children.

2. WIDOW — *Second Marriage* — *Homestead, Not Destroyed.* When real estate descends to a widow and children as a homestead, and such widow marries again, but, with her children, continues to occupy said real estate as a homestead, the marriage of said widow does not destroy the homestead character of said real estate so as to subject it to the payment of the debts of the decedent.

*Error from Rice District Court.*

THE opinion states the case.

*A. M. Lasley,* for plaintiff in error.

*J. W. Brinckerhoff,* for defendants in error.

Opinion by STRANG, C.: This was an action brought by Emma J. Banta, formerly Emma J. Brady, wife of Milton C. Brady, deceased, against Robert M. Brady, John E. Brady, Everitt M. Brady, and Cora M. Brady, minor children of Milton C. Brady, to partition the northeast quarter of section 20, township 20 south, of range 6 west.

John A. Brady, the plaintiff in error, who was the owner and holder of certain mortgages executed by Milton C. Brady and Emma J. Brady, during the life-time of Milton C. Brady, which are liens upon said land, became a party to the suit to foreclose his mortgage. Said John A. Brady was also, at the time of the bringing of said suit in partition, the owner of certain unsecured claims against the estate of Milton C. Brady, deceased, which had been presented and allowed by the probate judge of Rice county in favor of said John A. Brady, and against said estate, for which he also demanded judgment against the estate of Milton C. Brady, deceased. J. W. Brinckerhoff was the owner and holder of a mortgage exe-

cuted to him by Emma J. Banta before the institution of the suit in partition. The case was tried on the 26th of January, 1888, before the court without a jury, upon the following stipulations:

"Comes now the plaintiff by Brinckerhoff & Brinckerhoff, her attorneys, and A. M. Lasley, attorney for John A. Brady, one of the defendants herein, on this 26th day of January, 1888, the case having been regularly called for trial; and for the purpose of the trial of this case it is agreed and stipulated that the facts in this case are as follows, except that evidence of John Bland and plaintiff is also to be used to show facts:

"1. On the 1st day of April, 1881, Milton C. Brady and Emma J. Brady, the plaintiff herein, were husband and wife, and were owners of the following-described real estate, situated in Rice county, state of Kansas, to wit: The northeast quarter of section 20, township 20 south, range 6 west of the 6th P. M., and that on that date the said Milton C. Brady and wife gave two mortgages on said real estate, one to the American Freehold Mortgage Company of London, limited, to secure a note of $800 given by them to said mortgage company of that date, and one to secure a note of $4.16 given by them to W. T. Nicholas; the mortgage to secure the $800 note was a first mortgage lien, and the mortgage to secure the $4.16 note was a second mortgage lien.

"2. The plaintiff and Milton C. Brady lived together as husband and wife until the 13th day of September, 1883, upon the above-described real estate as their homestead, when the said Milton C. Brady, the then husband of the plaintiff, died, leaving the plaintiff herein his widow, and Robert M. Brady, John E. Brady, Everitt Brady, and Cora Brady, his children and minor heirs at law, who are still minors, the oldest of whom is now eight years old and living with the plaintiff.

"4. On the 1st day of February, 1885, the plaintiff herein married one of the defendants herein, viz., J. N. Banta, and they have lived together as husband and wife upon said real estate from that time until the present.

"5. The estate of the said Milton C. Brady was administered upon, and he had no other real estate than that mentioned above; and his personal estate was duly administered and his debts paid so far as the property would pay them.

"6. The defendant herein, John A. Brady, is and was a brother of Milton C. Brady, now deceased.

"7. The $800 note, and mortgage to secure the same, and the $4.16 note, and the mortgage to secure the same, were duly assigned to John A. Brady, he paying a valuable consideration for the same; these mortgages were on the land above described.

"8. There is now due the said John A. Brady, on the $800 note, $400, with interest at 12 per cent. from the 4th day of April, 1886; and there is now due the said John A. Brady $4.16, and interest thereon at 12 per cent. from the 4th day of April, 1886, and said John A. Brady paid the taxes on said real estate to the amount of $30.07, and that amount is due him, with interest at 12 per cent. from the 23d day of November, 1886; and the said John A. Brady, the defendant herein, is entitled to a foreclosure of said mortgages as a first and second lien on said real estate for the above specified amounts and interest due.

"9. John A. Brady, the defendant herein, purchased claims against said estate of several parties, as follows: Of Skiles & Wirshing, on January 25, 1884, $123.58; A. Minser, $2.55, on August 12, 1885; J. Hanna & Co., $95, August 11, 1885; J. H. Smith, $23.31, February 6, 1884; P. C. Magoffin, $30, August 12, 1885; H. J. Konantz, $15, August 12, 1885; W. G. Elliott, $25, October 29, 1883; Landis & Hollinger, $116.35. The said John A. Brady made proof of said claims in the probate court of Rice county, Kansas, against the estate of the said Milton C. Brady, August 18, 1885, and the same were allowed against said estate and entered in said probate court as claims against said estate proved according to law. The amount of said claims, principal and interest, to date is $586.16, and the same has never been paid or any part thereof.

"10. The administrator of the estate of Milton C. Brady had made his final settlement with the probate court prior to the beginning of this action, and all the property formerly belonging to the said Milton C. Brady has been administered, except the above-described real estate."

Together with certain evidence, upon which the court found the following additional facts:

"In addition to the facts agreed to in the stipulations, the court finds from the evidence that plaintiff and her minor children have continued to reside upon the premises in question ever since the death of plaintiff's former husband, and

that they have at no time abandoned the same, and still continue to reside thereon."

Upon the above facts, as stipulated by the parties and found by the court, the court made the following conclusions of law:

"As conclusions of law the court finds, that the land in question is subject to be partitioned in this action; that John A. Brady has a lien upon the premises under his mortgages for $493.49; that said mortgages may be foreclosed in this action; that the marriage of plaintiff with defendant J. N. Banta does not render said premises liable to John A. Brady's claims under the allowance made thereof by the probate court, and that he has no lien on said premises for said claims; that the homestead right of plaintiff and her minor children to said premises is not divested by reason of such marriage of plaintiff with defendant J. N. Banta."

On the above facts and conclusions of law, the court held that John A. Brady was entitled to recover of and from the plaintiff Emma J. Banta the sum of $493.49, and that said sum was a first lien upon the premises described in her petition, and gave him, John A. Brady, a judgment for said sum against said Emma J. Banta, with interest thereon at 12 per cent. The court also ordered the land sold at the end of six months, unless Emma J. Banta should pay said sum of $493.49, with interest and costs; and ordered the proceeds of said sale to be applied as follows: *First*, To the payment of the costs in the case. . *Second*, To the payment of said sum of $493.49 and interest thereon to John A. Brady. *Third*, The residue, if any, to be paid to said plaintiff and the other defendants, as follows : Emma J. Banta, one-half; Robert M. Brady, one-eighth; John E. Brady, one-eighth; Everitt Brady, one-eighth, and Cora M. Brady, one-eighth. The court also rendered judgment in favor of J. W. Brinckerhoff against Emma J. Banta and J. N. Banta for $153, and interest at 12 per cent., and made said judgment a lien on the interest of Emma J. Banta and J. N. Banta in the real estate in controversy, subject to the lien of John A. Brady thereon.

The court further ordered that if Emma J. Banta should pay said judgments, interest, and costs, within six months from the day of the judgment, a writ of partition should issue dividing the land, one-half to Emma J. Banta, and one-eighth each to Robert M. Brady, John E. Brady, Everitt Brady, and Cora M. Brady. The defendant John A. Brady objected to the conclusions of law and the judgment rendered in the case, and filed a motion for a new trial, which was overruled.

The first point the plaintiff in error calls the attention of the court to is embodied in the following question: When a husband residing upon land, his homestead, dies, leaving a widow and children, and the widow afterward marries, but with her children first, and afterward with her children and second husband, continues all the time to reside on and occupy said homestead, does the land continue the homestead of said family, and, as such, remain exempt from debts and liabilities of the deceased husband after the marriage of his said widow; or does it cease, upon said marriage and because thereof, to be the homestead of the family, and become subject to the debts of the deceased husband like other lands? A solution of this question involves a construction of ¶ 2593 of the General Statutes of 1889, which paragraph reads as follows:

"A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, occupied by the intestate and his family at the time of his death, as a residence, and continued to be so occupied by his widow and children after his death, together with all the improvements on the same, shall be wholly exempt from distribution under any of the laws of this state, and from the payment of debts of the intestate, but shall be the absolute property of the said widow and children: *Provided, however,* That the provisions of this section shall not apply to any incumbrance given by the consent of both husband and wife, nor to obligations for the purchase of said premises, nor to liens for the erection of improvements thereon."

The contention of the plaintiff in error is, that the marriage of the widow destroys the homestead character of the land

constituting the homestead of her former husband and herself, and by operation of law removes the exemption of the land from the debts of the first husband, which this section gives to a homestead, notwithstanding the former wife and her children by her first husband have continuously resided on and occupied the land since the death of the former husband and father. We do not think this position is tenable. There is no express provision in the statute supporting the contention of the plaintiff in error. The whole contention, so far as the statute is concerned, is based upon a mere inference arising from the use of the word "widow" therein. We do not think the legislature, by the word "widow" in this paragraph, intended to say that the mere marriage of the widow of a decedent should operate to destroy the homestead character of the home left her and her children by the former husband. Such marriage must be accompanied by some other act, as abandonment by her going to live with her husband elsewhere, to affect the homestead character of the home left her by her deceased husband. The section would mean exactly the same if it read: "and continued to be so occupied by his former wife and children after his death," instead of reading, as now: "and continued to be so occupied by his widow and children after his death." If it read thus, there would be no contention that the marriage of his former wife would affect the homestead character of the home.

But suppose the marriage of the widow in this case did affect the homestead as to her, could it be said that it also deprived the children of their homestead interest in the land left them as a homestead by their deceased parent? Clearly not. If the widow should marry, and then abandon the homestead to live with her husband elsewhere, she would undoubtedly lose her homestead right therein; and so she would if she should abandon the homestead without marrying; but, in either event, her act would not deprive the children who stuck to the homestead of their deceased father after his death of their homestead rights therein. We do not think

<div style="margin-left">Marriage of widow; homestead, when exempt from debts of former husband.</div>

that the marriage of the widow of the decedent, where she with her husband continues to occupy the homestead the same after marriage as before, operates to remove the provisions of the homestead law exempting it from the debts and liabilities of the deceased debtor. In *Vandiver v. Vandiver*, 20 Kas. 501, this court uses the following language:

"No good reason exists why the homestead of the intestate, 'toward which the eye of the creditor need never be turned' in the life-time of the debtor, shall, upon his death, be liable for claims of creditors when continued to be occupied by the widow or children of such debtor."

That was an action for partition of a homestead, and the exact question we are discussing in this case was not in that case; but as bearing upon the question involved herein, we quote the following, in addition to what is quoted above, from the opinion in that case:

"We are not called upon now to determine the nature of the occupancy after the death of a debtor to exempt the homestead from the payment of his debts; but certainly the requirement of 'occupancy' should be liberally construed, so as to favor the beneficial purposes of these sections of the law."

Exemption laws of all kinds are to be liberally construed in favor of the purpose for which they were enacted. (*Mallory v. Berry*, 16 Kas. 295; *Rasure v. Hart*, 18 id. 340; *Donmeyer v. Donmeyer*, 43 id. 444; *Bank v. Warner*, 22 id. 537.)

The second inquiry relates to the distribution of the homestead. Was the order of the court in relation to the partition thereof erroneous? We answer in the negative. The statute expressly provides for such an order. Paragraph 2596, General Statutes of 1889, reads as follows:

"If the intestate left a widow and children, and the widow again marry, or when all of said children arrive at the age of majority, said homestead shall be divided, one-half in value to the widow, and the other one-half to the children."

<div style="margin-left">1. Widow again marries; partition of homestead.</div>

(See, also, *Vandiver v. Vandiver*, 20 Kas. 501; *Hafer v. Hafer*, 36 id. 447.)

We think the third inquiry of the plaintiff in error is answered by the anwer to the first. If the marriage of Emma J. Brady with J. N. Banta did not destroy the homestead character of the home left by the intestate to his widow and children, it follows that said homestead remained exempt from the debts of said intestate so long as occupied by his former wife or children, except so far as those debts were made liens thereon during the life-time of said intestate. The court below seems to have dropped into an error in requiring Emma J. Banta to pay the whole of the judgment of John A. Brady. His mortgages were a lien upon the whole of said homestead. Emma J. Banta succeeded to only a one-half interest therein, while the children of the intestate succeeded to the other one-half interest therein. The judgment of John A. Brady should be against the whole of said homestead, and be paid by the widow and children in proportion to their interests therein. The judgment should be so modified, and in all other respects it is recommended that it be affirmed.

By the Court: It is so ordered.

All the Justices concurring.